**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Laurie Beth SMITH, Appellant.**

Superior Court of Pennsylvania.

Submitted March 13, 2006.

Filed July 14, 2006.

David R. Eshelman, Reading, for appellant.

Alisa R. Hobart, Asst. Dist. Atty., Reading, for Com., appellee.

BEFORE: GANTMAN, McCAFFERY and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Laurie Beth Smith appeals from the judgment of sentence of one to two years imprisonment, and payment of a $2,500 fine and costs of prosecution, imposed after a jury convicted her of driving under the influence of alcohol (DUI).[1]

¶ 2 Before trial, appellant filed a motion to suppress evidence, quash information, dismiss charges and discharge defendant, and for writ of habeas corpus. A hearing on the motion was held on November 4, 2004, at which Officer Matthew Rissmiller of the Central Berks Regional Police Department was the only witness to testify. Following the hearing, the court made the following findings of fact and denied the motion.

1. On May 22, 2004, at approximately 10:31 p.m. Officer Matthew Rissmiller of the Central Berks Regional Police Department received a call at police headquarters from Berks Radio that a red SUV was traveling in the wrong direction in the 600 block of Carsonia Avenue, Lower Alsace Township, Berks County.

2. Approximately two minutes later, as he drove from his office, Officer Rissmiller received a second call from Berks Radio that someone reported hearing a loud screeching noise, looked outside and saw a red SUV in front of 841 Carsonia Avenue.

3. Two minutes after leaving his office, Officer Rissmiller arrived at 841 Carsonia Avenue where he observed a red SUV parked with its right front tire against the curb at an angle and the back right tire situated at least two feet from the curb.

4. The SUV's headlights and taillights were on, music was playing inside the vehicle and a key in the ignition was in the on position.

5. Officer Rissmiller exited his vehicle and approached the SUV where he saw the defendant in the driver's seat.

6. The officer tried to get the defendant's attention by knocking on the driver's window and tried to open the door. The door was locked and after 30 seconds the defendant turned, looked over her shoulder and said something the officer could not hear. She then turned away from the officer.

7. Officer Rissmiller again knocked on the window and 20 seconds later the defendant either rolled down the window or opened the door and the officer asked her to turn down the music so he could talk to her and she did so. He then asked if everything was okay and if he could see her driver's license, registration and insurance cards.

8. She found her license but could not remove it from her wallet. She did not locate any other paperwork.

9. Officer Rissmiller then asked the defendant to turn off the car, step out and proceed to the rear of the SUV where he could talk to her.

10. The defendant had difficulty walking to the back of the vehicle and her speech was slurred. Officer Rissmiller could not understand most of what she said.

1. 75 Pa.C.S.A. § 3802(a)(1).

11. The officer observed that the defendant's clothing was disheveled.
12. Officer Rissmiller observed in the SUV's front passenger area a bag with four cans of beer inside and two open cans of beer on the floor.
13. At the officer's request, the defendant performed three field sobriety tests and failed all of them.
14. Officer Rissmiller then arrested the defendant for suspicion of driving under the influence of alcohol and transporte[d] her to the DUI Processing Center.
15. After the officer read an implied consent form to the defendant, she refused to submit to a blood-alcohol test.

Record No. 15, Findings of Fact and Conclusions of Law Pursuant to Pa.R.Crim.P. 581(I), 12/2/04, Eshelman, J., at 1–2.

¶ 3 Appellant also filed motions *in limine* to exclude evidence concerning the field sobriety tests and her refusal to submit to a blood test. The court likewise denied those motions. Appellant was convicted of DUI and sentenced as a fourth time DUI offender, as a pre-sentence investigation report revealed two prior sentences for DUI imposed on June 12, 1995, for two separate DUI convictions, and a third imposed on April 9, 2001. This timely appeal followed in which appellant raises the following issues for our review:

A. Does an illegal stop occur when the police approach defendant seated in the driver's seat of a red Ford Explorer parked at 841 Carsonia Avenue minutes after receiving a call that a red SUV-type vehicle was traveling the wrong direction on Carsonia Avenue and after a second call that a red SUV was seen in front of 841 Carsonia Avenue after a loud screeching noise was heard from the street?

B. When police officers render opinions based on their specialized knowledge of the administration, performance and results of defendant's performance and/or refusal to perform field sobriety tests, must Pa.R.E. 702 regarding expert testimony first be satisfied before admitting such evidence?

C. Where defendant is not advised by PennDot form DL–26 or otherwise of the penalties consequent to a fourth DUI conviction as required by Section 1547(b)(2)(ii) of the Vehicle Code if chemical testing is refused, is defendant's refusal of a blood test improperly admitted at trial?

D. Is the evidence insufficient to sustain the verdict of guilty of driving under the influence of alcohol because the Commonwealth failed to prove beyond a reasonable doubt that defendant was incapable of safely driving because of the consumption of alcohol?

E. Did the court improperly sentence defendant to mandatory one-year minimum term of imprisonment as a fourth DUI offender and for having refused a blood test where two (2) of defendant's prior DUI convictions occurred more than seven (7) years but less than ten (10) years ago and defendant was neither advised of the penalties consequent to a fourth conviction for DUI as required by Section 1547(b)(2)(ii) of the Vehicle Code before refusing a blood test nor of her right to counsel, where the jury also did not find as a fact the prior convictions and/or that defendant had indeed refused a blood test?

Appellant's brief at 6. We address these issues *seriatim*.

■ ¶ 4 The following principles are applicable to our review of appellant's first issue on appeal:

Our standard of review where an appellant appeals the denial of a suppression motion is well-established: we are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We may consider the evidence of the witnesses offered by the prosecution, as verdict winner, and only so much of the defense evidence that remains uncontradicted when read in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court below were erroneous.

*Commonwealth v. Scott*, 878 A.2d 874, 877 (Pa.Super.2005), *appeal denied*, 586 Pa. 749, 892 A.2d 823 (2005) (citations omitted).

■ ¶ 5 We find the suppression court's findings of fact are supported by the record and, in fact, appellant does not dispute those findings. Based upon those facts, the court concluded the officer's initial interaction with appellant was a mere encounter and thus did not need to be supported by any level of suspicion. Assuming, however, that the interaction was an investigative detention, the court found the officer possessed sufficient facts to support reasonable suspicion. Record No. 15, Findings of Fact at 2.

■ ¶ 6 It is well-established there are three basic categories of interactions between citizens and the police. The first category, a mere encounter or request for information, does not need to

be supported by any level of suspicion, and does not carry any official compulsion to stop or respond. The second category, an investigative detention, derives from *Terry*[2] and its progeny: such a detention is lawful if supported by reasonable suspicion because, although it subjects a suspect to a stop and a period of detention, it does not involve such coercive conditions as to constitute the functional equivalent of an arrest. The final category, the arrest or custodial detention, must be supported by probable cause.

*Commonwealth v. Sands*, 887 A.2d 261, 268–269 (Pa.Super.2005), *quoting Commonwealth v. Hill*, 874 A.2d 1214, 1217 (Pa.Super.2005). "An investigative detention occurs when a police officer temporarily detains an individual by means of physical force or a show of authority for investigative purposes. [*See Commonwealth v. Ellis*, 541 Pa. 285, 662 A.2d 1043 (1995).] Such a detention constitutes a seizure of a person and thus activates the protections of the Fourth Amendment and the requirements of [*Terry* ]." *Commonwealth v. Barber*, 889 A.2d 587, 592 (Pa.Super.2005). We further note that section 6308 of the Vehicle Code, **Investigation by police officers**, authorizes police to stop a vehicle when they possess reasonable suspicion that the driver has violated the Code. 75 Pa.C.S.A. § 6308; *see also Sands, supra.*

■ ¶ 7 To meet the standard of reasonable suspicion, "the officer must point to specific and articulable facts which, together with the rational inferences therefrom, reasonably warrant the intrusion. In ascertaining the existence of reasonable suspicion, we must look to the totality of the circumstances to determine whether the officer had reasonable suspicion that

**2.** *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

criminal activity was afoot." *Barber, supra* at 593 (citations and quotations omitted). Further, "police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including 'tips' from citizens." *Id.*

¶ 8 Upon review, and considering the totality of the circumstances, we find the court committed no error in concluding police had reasonable suspicion to detain appellant. The first call, known by Officer Rissmiller to have originated from the residence of 619 Carsonia Avenue, indicated to police that a red SUV was traveling in the lane of opposing traffic in the 600 block of Carsonia Avenue. The identity of that caller was relayed to the officer. N.T., Suppression Hearing, 11/4/04, at 6, 16–19, 22. The officer then received information as to a second call, originating from the residence at 841 Carsonia Avenue, indicating the caller heard a loud screeching noise originating from a red SUV, which was then parked in front of that residence, two blocks from the location of the red SUV in the first call. The identity of the second caller also was relayed to the officer. *Id.* at 7, 20–22. It is notable that these were two separate tips, each from identified tipsters. *See Barber, supra* at 593, *quoting Commonwealth v. Lohr*, 715 A.2d 459, 461–462 (Pa.Super.1998) (reiterating that "a tip from an informer known to the police may carry enough indicia or reliability for the police to conduct an investigatory stop, even though the same tip from an anonymous informant would likely not have done so."). Upon arriving at the scene within minutes of receiving the two calls indicating unsafe driving, the officer found appellant in the driver's seat of her vehicle, which fit the description given by both callers, a red SUV, at the precise location described by the second caller, parked crookedly, with the front tire touching the curb and the rear tire two

feet from the curb, with the stereo playing loudly and the car in gear with the key in the "on" position. N.T., Suppression, at 7–8. Certainly, the officer had sufficient reason to believe this particular vehicle (along with the driver thereof) was the subject of the tips. *Cf. Barber* (holding that where an identified caller reported specifically that the appellant publicly urinated and drank while driving, and provided a description of the vehicle, its license plate number, and its specific location, the officers had reasonable suspicion to conduct a brief investigative stop). Common sense informs this Court that appellant's argument, "no nexus existed between defendant, her vehicle, and the reports the police had received," since the officer had no information such as the license plate number, make, model, or year of the vehicle, its direction of travel or the number of occupants in the vehicle, is disingenuous. *See* appellant's brief at 11, 13.

¶ 9 Next, appellant contends the court erred in allowing Officers Matthew Mace and Matthew Rissmiller and Detective Michael Leach to testify as to appellant's performance on sobriety tests and to opine as to whether she was incapable of safe driving. We first note, "[t]he admission of evidence is committed to the sound discretion of the trial court and an appellate court may reverse only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Bardo*, 551 Pa. 140, 153, 709 A.2d 871, 877 (1998). As to this issue, appellant concedes that in *Commonwealth v. Ragan*, 438 Pa.Super. 505, 652 A.2d 925 (1995), this Court upheld the admission of evidence concerning a defendant's performance on field sobriety tests, but argues that here, the officers were improperly allowed to render their opinion as to whether appellant was incapable of safe driving based upon her performance on the tests. Appellant specifi-

cally cites to Mace's testimony, at N.T., Trial, 6/22/05—6/23/05, at 92–110.[3] A review of that testimony indicates Mace was asked as to appellant's performance on field sobriety tests, which is proper under *Ragan,* and then asked whether, based on his eight and one-half years experience as a police officer, and having seen many people under the influence of alcohol, he could form an opinion as to whether appellant was incapable of safe driving. Certainly, appellant's performance on field sobriety tests would inform the officer as to her state of intoxication, and along with his other observations, form the basis of his opinion on the matter. *See Ragan, supra* at 928 ("sobriety tests...are grounded in theories which link an individual's lack of coordination and the loss of concentration, with intoxication"); *see also Commonwealth v. Bowser,* 425 Pa.Super. 24, 624 A.2d 125, 133 (1993) ("intoxication is a matter of common knowledge and opinions given by lay people are permissible on the issue" provided that the lay witness has sufficient facts on which to base his opinion regarding another's intoxication). In turn, appellant's state of intoxication would inform the officer as to whether she would be capable of safe driving. We thus reject this allegation of error.

¶ 10 Appellant next contends evidence as to her refusal to submit to a blood test was inadmissible since the officer advised her only of the "minimum criminal penalties" applicable and not those that would have been applicable to a fourth time offender like herself. This Court's recent *en banc* case of *Commonwealth v. Jaggers,* 903 A.2d 33 (Pa.Super.2006) (*en banc*), disposes of this issue. In *Jaggers,* we found that the refusal warnings used by police do not sufficiently describe the penalties for declining chemical testing. We explained, "the Implied Consent Law requires police to provide a clear and concise warning of the consequences of refusing an alcohol test. Specifically, section 1547(b)(2)(ii) requires police to inform one arrested for DUI that 'upon conviction, plea or adjudication of delinquency for violating section 3802(a), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).' " *Id.* at 36. Further, we found "[t]he problem is exacerbated by the warnings card used by police, PennDOT Form DL–26, which not only fails to explain the situation in plain English but also *distorts* the situation by implying a more *lenient* penalty than otherwise required for repeat offenders." *Id.* at 36. We concluded however, the proper remedy was *not* suppression of the refusal evidence, but rather the remedy in these cases is to impose sentence as if the defendant had not refused chemical testing. Accordingly, we are constrained to remand this case for proceedings consistent with this Court's *en banc* Opinion in *Jaggers.*

¶ 11 Turning to the remainder of appellant's issues, appellant next contends the Commonwealth failed to prove beyond a reasonable doubt that she was incapable of safe driving due to the consumption of alcohol, thus the evidence was insufficient to convict her of DUI.

A challenge to the sufficiency of the evidence is a question of law, subject to plenary review. When reviewing a sufficiency of the evidence claim, the appellate court must review all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as the ver-

---

**3.** Without elaboration, appellant indicates Office Matthew Rissmiller and Detective Michael Leach presented similar testimony and opined that appellant was "incapable of safe driving." Appellant's brief at 15.

dict winner. Evidence will be deemed to support the verdict when it establishes each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brotherson,* 888 A.2d 901, 904 (Pa.Super.2005), *appeal denied,* —— Pa. ——, 899 A.2d 1121 (2006), *quoting Commonwealth v. Williams,* 871 A.2d 254, 259 (Pa.Super.2005).

¶ 12 Appellant was convicted of DUI under Section 3802(a)(1), which provides:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1). Appellant argues there is little evidence to support the conclusion that she was incapable of safe driving due to the consumption of alcohol. Based upon the following testimony presented at trial, we disagree.

¶ 13 Stephanie Auchter and Shannon McNeil heard what sounded like tires screeching, looked outside, and observed appellant's car situated on the grass median in the middle of the road in the 600 block of Carsonia Avenue. N.T., Trial, at 46–48, 69–70. They approached the vehicle and knocked on the window. Appellant slowly raised her head and looked at the women with a blank, glazed stare. *Id.* at 48–51, 74. Appellant then proceeded in her vehicle off of the median and into the street, driving in the opposing lane of traffic on Carsonia Avenue. She had to swerve to avoid oncoming traffic and she forced another driver to pull over to avoid her. *Id.* at 52–53, 73–78. The women then observed appellant move to the correct lane of traffic and then proceed to another stop. *Id.* at 53–54. They watched until Officer Rissmiller appeared on the scene. *Id.* at 55, 77.

¶ 14 Rissmiller arrived on the scene in a marked police car with the lights and siren activated, and in uniform. *Id.* at 119. Appellant was alone in the vehicle, in the driver's seat, with the radio blaring. *Id.* at 99, 121, 132. The car was parked crookedly, with the front wheel against the curb and the rear end approximately two feet from the curb. *Id.* at 120–121. Rissmiller knocked on the window once. Even though faced with a uniformed officer, whose marked car was parked behind hers with the lights activated, appellant did not respond. She was "slumped over" the center console. *Id.* at 121–123. He knocked again and she responded by saying something incoherent and then went back to whatever she was doing in the console. *Id.* at 123. He knocked a third time before she finally opened the door to speak with the officer. *Id.* Rissmiller asked appellant for her driver's license, insurance card, and registration. After trying unsuccessfully for a minute or two to remove her license from her wallet, the officer requested the entire wallet. Appellant never did provide the other documents requested. *Id.* at 123–124. Rissmiller then asked appellant to perform field sobriety tests. He noticed her breath smelled of alcohol and, as appellant walked to the rear of the car, he noticed appellant's gait was unsteady and her clothing was disheveled. *Id.* at 125. Appellant failed each of the sobriety tests she attempted and she refused to submit to a

blood alcohol test. *Id.* at 127–131, 134. Based upon all of these factors, Rissmiller concluded appellant was incapable of safe driving due to the consumption of alcohol. *Id.* at 132.

¶ 15 Officer Mace was also at the scene with Rissmiller. He likewise arrived at the scene in a marked car with lights and siren activated. *Id.* at 94–96. He observed in appellant's car a bag with four full beer cans, and two empty beer cans, one on the passenger seat and one on the passenger floor. *Id.* at 98, 106. Mace observed appellant taking and failing each of the sobriety tests. *Id.* at 102–105. Based upon his observations and experience, he concluded appellant was under the influence of alcohol to a degree that rendered her incapable of safe driving. *Id.* at 108.

¶ 16 Michael Leach, a police officer assigned to the DUI processing center, observed appellant at the center. Based upon her demeanor, appearance, glassy, bloodshot eyes, strong odor of alcohol, combative behavior, and unsteady gait, he concluded she was under the influence of alcohol to a degree that rendered her incapable of safe driving. *Id.* at 159–169. A videotape of appellant's conduct at the center was admitted into evidence as well. *Id.*

¶ 17 After careful review of the evidence presented, we find no error. The testimony presented was sufficient to prove the elements of DUI beyond a reasonable doubt. Appellant drove onto a grassy median, drove in the wrong lane of traffic, smelled of alcohol, was unsteady on her feet, was combative, failed the field sobriety tests, and refused a blood alcohol test. Accordingly, pursuant to our standard of review, we find Appellant is entitled to no relief on this claim.

¶ 18 In her final issue on appeal, appellant submits multiple challenges to the sentence she received. All of these challenges are to the legality of her sentence. Thus our review is plenary. *Commonwealth v. Williams,* 871 A.2d 254, 262 (Pa.Super.2005) (reiterating that the issues of sentence legality and the trial court's application of statutes are questions of law over which this Court exercises plenary review).

■■■ ¶ 19 First, appellant noted that she argued before the sentencing court that she should have been sentenced as a first time offender because the jury did not find as facts her three prior convictions. She properly notes, however, that pursuant to *Commonwealth v. Aponte,* 579 Pa. 246, 855 A.2d 800 (2004), *cert. denied,* 543 U.S. 1063, 125 S.Ct. 886, 160 L.Ed.2d 792 (2005), "where... the judicial finding is the fact of a prior conviction, submission to a jury is unnecessary, since the prior conviction is an objective fact that initially was cloaked in all the constitutional safeguards, and is now a matter of public record." *Id.* at 264, 855 A.2d at 811.

■■■ ¶ 20 Next she contends application of the ten-year "look back period" under 75 Pa.C.S.A. § 3806(b), that permitted the court to consider her two convictions from 1995 when imposing sentence, as opposed to the prior version of the law which provided only a seven year "look back period," violates her due process, double jeopardy, and *ex post facto* constitutional protections. This Court recently disposed of this issue in *Commonwealth v. McCoy,* 895 A.2d 18 (Pa.Super.2006). We concluded there is no *ex post facto* violation in application of the ten year look back provision of Section 3806(b) because "[t]he statute does not reach into the past and increase punishment for concluded DUI convictions [but rather] considers 'facts or conditions' which came into existence prior to its enactment, i.e. prior DUI

convictions, and effects only the punishment for a new conviction under the newly enacted DUI law". *See also Commonwealth v. Tustin,* 888 A.2d 843 (Pa.Super.2005) (finding no due process violation in the ten year look back provision of 3806(b), and stating "[t]he enhanced punishment imposed for a later offense is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes, but instead as a stiffened penalty for the latest crime, which is considered to be an aggravated offense because it is a repetitive one").

 ¶ 21 Appellant also contends her *refusal to submit to a blood test was not a proper basis upon which to enhance her sentence since she was not advised of the consequent sentencing enhancements applicable in the case of such refusal, nor was she advised of her "right to counsel." Appellant's brief at 24–25. We have already agreed she was not properly advised of the penalties she faced for refusal to submit to the blood test and her sentence must be revised accordingly.[4] Thus her sentence will not be enhanced based upon her refusal to submit to a blood test. Also, there is no right to counsel before deciding whether to consent to a chemical test. *See McCoy, supra; see also Commonwealth v. Ciccola,* 894 A.2d 744 (Pa.Super.2006) (finding there is no Sixth Amendment right to counsel before deciding whether to consent to a chemical test).

¶ 22 Finally, appellant contends the jury was required to make a separate finding that she refused to submit to chemical testing before the attendant sentencing enhancement can be applied. Again, based upon our review, her sentence will not be enhanced based upon her refusal to submit to chemical testing.

¶ 23 Affirmed in part, reversed in part, and remanded for proceedings consistent with this Opinion.

Jurisdiction relinquished.

---

**4.** The Commonwealth contends appellant's sentence was enhanced based only upon prior convictions and not based upon her refusal of the blood test. Commonwealth's brief at 15–16. It contends the sentencing enhancements for a fourth DUI offense where the blood test is refused became effective in November 29, 2004, but the offense here was committed on May 22, 2004, thus those enhancements were not applicable. We disagree. *See* 2003–24 (S.B.8) §§ 9.1, 10, approved Sept. 30, 2003, see §§ *9.1, 10* for effective date information. The enhancements of 75 Pa.C.S.A. § 1547(b)(2)(ii), and § 3804(c) became effective February 1, 2004. The sentencing transcript indicates the application of the mandatory sentence under those enhancements. N.T., Sentencing, 8/9/05, at 3; *see also* 75 Pa.C.S.A. § 1547(b)(2)(ii), and § 3804(c).