J. S71008/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                  :           PENNSYLVANIA
                  v.              :
                                    :
AL-QUADIR HUBBARD,          :       No. 479 MDA 2014
                                    :
         Appellant      :

Appeal from the Judgment of Sentence, January 24, 2014,
in the Court of Common Pleas of Luzerne County
Criminal Division at No. CP-40-CR-0004253-2012

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA AND FITZGERALD,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED JANUARY 16, 2015**

Al-Quadir Hubbard appeals from the judgment of sentence of January 24, 2014, following his conviction of possession, possession with intent to deliver ("PWID") (heroin), and firearms offenses.  We affirm the judgment, but remand for re-sentencing.

The trial court made the following findings of fact relative to appellant's pre-trial suppression motion:

> 1. While on routine patrol, Officer Robert Collins, of the Wilkes-Barre Police Department, observed a parked vehicle in the area of Northampton and South Welles Street in the City of Wilkes-Barre on August 26, 2012 at approximately 5:00 p.m.
>
> 2. Officer Robert Collins, Wilkes-Barre Police Department, initially observed the subject vehicle with a driver in the vehicle and

---

\* Former Justice specially assigned to the Superior Court.

[appellant] leaning into said vehicle from the passenger side with the door open.

3. Officer Collins, knowing the above referenced area of Wilkes-Barre to be a high crime and high drug area, approached the vehicle to speak with the driver and passenger.

4. Upon Officer Collins approaching the vehicle, [appellant] then started moving about and sat in the front passenger seat but did not close the car door.

5. The driver told police he was visiting his friend ([appellant]) who lived on South Welles Street, Wilkes-Barre, Pa. However, [appellant] told police he lived in Plymouth, PA.

6. The driver and [appellant] both acted and appeared nervous.

7. Officer Collins observed a large bulge in [appellant]'s right front pants pocket, and further observed [appellant] reaching down and around the area of his pocket and twisting as if trying to conceal something.

8. When asked if there were any guns or weapons in the vehicle, neither the driver nor [appellant] answered Officer Collins.

9. [Appellant] was asked to exit the vehicle and submit to a "Terry frisk" for officer safety.

10. Officer Collins immediately felt a gun in the passenger's pocket.

11. The gun, which was observed by Officer Collins to have obliterated serial numbers[,] was seized by Officer Collins.

12. The testimony of the Commonwealth's witness was credible.

Findings of fact and conclusions of law, 9/25/13 at 1-2 (docket #24).

On September 25, 2013, appellant's suppression motion was denied. On November 22, 2013, following a waiver trial before the Honorable David W. Lupas, appellant was found guilty of the above offenses.[1] On January 24, 2014, appellant received a mandatory minimum sentence of 5 to 10 years' imprisonment on count 1, PWID, and a consecutive sentence of 18 to 36 months on count 3, firearms not to be carried without a license, for an aggregate sentence of 6½ to 13 years' imprisonment. Count 4, possession, merged for sentencing purposes; the remaining sentences were run concurrently.[2] No post-sentence motions were filed; on February 3, 2014, appellant filed a timely notice of appeal. On February 6, 2014, appellant was ordered to file a concise statement of errors complained of on appeal within 21 days pursuant to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A. On February 7, 2014, counsel was permitted to withdraw, and new counsel was appointed to represent appellant on the appeal. On February 13, 2014, appellant filed a Rule 1925(b) statement, alleging trial court error in the

---

[1] After Officer Collins recovered the firearm, during a search incident to arrest, Officer Collins found four bricks of heroin, a cell phone, and $112 in appellant's left-front pants pocket. (Notes of testimony, 11/22/13 at 12.)

[2] On November 22, 2013, appellant pled guilty to an additional count of PWID at a separate docket number, relating to the execution of a subsequent search warrant. (Notes of testimony, 11/22/13 at 22-27.)

denial of his motion to suppress evidence. On June 3, 2014, the trial court filed a Rule 1925(a) opinion.[3]

Appellant has raised the following issue for this court's review: "Whether the Trial Court erred in denying Appellant's Motion to Suppress Evidence[?]" (Appellant's brief at 1.)[4]

> Our standard of review where an appellant appeals the denial of a suppression motion is well-established: we are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We may consider the evidence of the witnesses offered by the prosecution, as verdict winner, and only so much of the defense evidence that remains uncontradicted when read in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions

---

[3] We note that appellant failed to attach to his brief either his Rule 1925(b) statement or the trial court's Rule 1925(a) opinion, in violation of Pa.R.A.P. 2111.

[4] The trial court contends that the issue is waived due to appellant's vague Rule 1925(b) statement. (Trial court opinion, 6/3/14 at 4.) **See Commonwealth v. Smith**, 955 A.2d 391, 393 (Pa.Super. 2008) (**en banc**) ("when issues are too vague for the trial court to identify and address, that is the functional equivalent of no concise statement at all"), citing **Commonwealth v. Dowling**, 778 A.2d 683, 686 (Pa.Super. 2001). In appellant's Rule 1925(b) statement, he alleged only that, "The trial court erred in denying [appellant]'s Motion to Suppress Evidence." (Docket #36.) However, the only issue to be decided at the suppression stage of the proceedings was whether or not Officer Collins had the requisite reasonable suspicion to stop and frisk appellant. (Notes of testimony, 8/21/13 at 14-16.) Therefore, in context, we determine that appellant's statement is not impermissibly vague.

> reached by the court below were erroneous.

> *Commonwealth v. Scott*, 878 A.2d 874, 877 (Pa.Super.2005), *appeal denied*, 586 Pa. 749, 892 A.2d 823 (2005) (citations omitted).

*Commonwealth v. Smith*, 904 A.2d 30, 35 (Pa.Super. 2006).

> There are three levels of recognized interactions between the police and the citizenry:

>> The first [level of interaction] is the 'mere encounter' (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an 'investigative detention' must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or 'custodial detention' must be supported by probable cause.

> *Commonwealth v. Stevenson*, 894 A.2d 759, 770 (Pa.Super.2006) (citation omitted).

*Commonwealth v. Clinton*, 905 A.2d 1026, 1030 (Pa.Super. 2006),

*appeal denied*, 934 A.2d 71 (Pa. 2007).

> "An investigative detention occurs when a police officer temporarily detains an individual by means of physical force or a show of authority for investigative purposes. [*See Commonwealth v. Ellis*, 541 Pa. 285, 662 A.2d 1043 (1995).] Such a detention constitutes a seizure of a person and thus activates the protections of the Fourth Amendment and the requirements of [*Terry*]." *Commonwealth v. Barber*, 889 A.2d 587, 592 (Pa.Super.2005).

**Smith**, **supra**.[5]  "The appellate courts have mandated that law enforcement officers, prior to subjecting a citizen to an investigatory detention, must harbor at least a reasonable suspicion that the person seized is then engaged in unlawful activity."  **Barber**, 889 A.2d at 593, citing **Commonwealth v. Nagle**, 678 A.2d 376 (Pa.Super. 1996).

Preliminarily, we observe that when Officer Collins initially approached the vehicle, it was a mere encounter.  Officer Collins was driving an unmarked car and parked behind the driver, Shaheed Coleman's, vehicle. (Notes of testimony, 8/21/13 at 10-11.)  Officer Collins did not activate any lights or siren, and did not have his weapon drawn.  (**Id.** at 11-12.) Officer Collins was in full uniform, and alone.  (**Id.** at 12, 19.)  Officer Collins asked Coleman "what's going on."  (**Id.** at 9.)  Coleman stated that he was visiting a friend and motioned towards appellant.  (**Id.**)  The interaction at that point was a mere encounter, which does not implicate constitutional prohibitions against unreasonable searches and seizures.  **Commonwealth v. Davis**, 2014 WL 5140282 at *2 (Pa.Super. filed October 14, 2014), citing **Commonwealth v. Coleman**, 19 A.3d 1111, 1116-1117 (Pa.Super. 2011) (police officers' approaching defendant on street and asking questions was mere encounter).  However, Officer Collins' subsequent action in patting down appellant's pants pockets was a **Terry** frisk.

> A **Terry** frisk is a type of investigative detention
> requiring reasonable suspicion "that criminal activity

---

[5] **Terry v. Ohio**, 392 U.S. 1 (1968).

is afoot and that 'the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others.'" ***Commonwealth v. Guess***, 53 A.3d 895, 901 (Pa.Super.2012) (quoting ***Terry***, 392 U.S. at 24). The purpose of a ***Terry*** frisk is not to discover evidence of a crime, but to protect the police officer conducting the investigation. ***Id.***; ***see also Commonwealth v. Scarborough***, 89 A.3d 679, 683 (Pa.Super.2014).

***Id.***

The reasonable suspicion necessary to conduct a ***Terry*** frisk and, in fact, all investigative detentions

> is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

***Commonwealth v. Fell***, 901 A.2d 542, 545 (Pa.Super.2006) (quoting ***Alabama v. White***, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)).

***Id.***

"The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances." ***Commonwealth v. Holmes***, 609 Pa. 1, 14 A.3d 89, 96 (Pa.2011). In assessing the totality of the circumstances, a court must give weight to the inferences that a police officer may draw through training and experience. ***Id.*** at 95. "Also, the totality of the circumstances test does not limit our inquiry to an examination of only those

facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer." ***Commonwealth v. Rogers***, 578 Pa. 127, 849 A.2d 1185, 1189 (Pa.2004) (internal quotation and alteration omitted); ***see also Scarborough***, 89 A.3d at 684 (holding that the "single factor of the defendant keeping his hand in his pocket after being asked to remove it" constituted reasonable suspicion to stop and frisk).

***Id.*** at *3. "Review of an officer's decision to frisk for weapons requires balancing two legitimate interests: that of the citizen to be free from unreasonable searches and seizures; and that of the officer to be secure in his personal safety and to prevent harm to others." ***Commonwealth v. Zhahir***, 751 A.2d 1153, 1158 (Pa. 2000), citing ***Dunaway v. New York***, 442 U.S. 200, 209 (1979).

Instantly, Officer Collins testified that this was a high-crime, high-drug area. (Notes of testimony, 8/21/13 at 8.) Officer Collins had made prior drug arrests at that intersection. (***Id.***) Officer Collins had 6½ years' experience as a police officer. (***Id.*** at 7.) When Officer Collins asked Coleman where his friend lived, Coleman stated that he lives on South Welles Street, which was the street on which they were parked. (***Id.*** at 9.) However, when Officer Collins asked appellant where he lived, appellant said he lived in Plymouth. (***Id.***) When appellant got into the passenger seat of the car, Officer Collins noticed that he had a large bulge in his right front pocket. (***Id.***) Officer Collins testified that both appellant and

Coleman appeared to be very nervous. (*Id.* at 13.) Officer Collins was concerned that the object could be a handgun. (*Id.* at 13, 24.)

Officer Collins asked appellant to keep his hands where he could see them. (*Id.* at 9, 13.) Officer Collins testified that appellant ignored his request and continued to keep his hands near his pocket. (*Id.* at 9.) Appellant was also twisting his body in an apparent attempt to conceal whatever was in his pocket. (*Id.* at 9, 13.) At that point, Officer Collins asked Coleman and appellant whether they had any guns in the vehicle or on their person; neither responded. (*Id.*) Officer Collins then asked appellant to step out of the vehicle so he could conduct a *Terry* frisk. (*Id.* at 14.) Officer Collins patted down appellant's right front pocket and felt what he immediately perceived to be a handgun. (*Id.*) Officer Collins recovered a handgun with the serial numbers scratched off. (*Id.*) At that point, appellant was placed under arrest. (*Id.*)

Clearly, considering the totality of the circumstances, Officer Collins had reasonable suspicion that criminal activity was afoot and that appellant was armed and potentially dangerous. Coleman and appellant gave conflicting stories about where appellant lived. Both appeared to be nervous. Appellant had a large bulge in his right front pocket and refused to remove his hands from that area, even after being specifically instructed to do so by Officer Collins. Appellant was also contorting his body in such a way as to conceal the area from Officer Collins' view. Officer Collins was

justifiably concerned that the object could be a gun. **See Davis**, **supra** (finding reasonable suspicion for **Terry** frisk where the officer observed the defendant and another individual standing over an unconscious man in the middle of the street at 2:00 a.m. in a high-crime area, and the officer noticed an object weighing down the right breast pocket of the defendant's jacket); **Zhahir**, 751 A.2d at 1158 ("there is no reason why an officer . . . should have to ask one question and take the risk that the answer might be a bullet"), quoting **Terry**, **supra** at 33. We also note that the trial court, sitting as finder-of-fact at the suppression hearing, found Officer Collins' testimony to be credible. The trial court did not err in denying appellant's motion to suppress the evidence.

Finally, we must address the legality of appellant's sentence. The Commonwealth notes that appellant was sentenced to a mandatory minimum of 5 to 10 years' incarceration for PWID under 42 Pa.C.S.A. § 9712.1 (drug offenses committed with firearms). (Commonwealth's brief at 9 n.1.) In **Commonwealth v. Newman**, 99 A.3d 86 (Pa.Super. 2014) (**en banc**), we found Section 9712.1 unconstitutional in light of **Alleyne v. United States**, ___ U.S. ___, 133 S.Ct. 2151 (2013), which held that any fact that served to aggravate the minimum sentence must be found by a jury beyond a reasonable doubt. "Under **Alleyne**, the possession of the firearm must be pleaded in the indictment, and must be found by the jury beyond a reasonable doubt before the defendant may be subjected to an

increase in the minimum sentence." ***Newman***, 99 A.3d at 98. Because Section 9712.1 allows the trial court, as opposed to a jury, to increase a defendant's minimum sentence based upon a preponderance of the evidence that the defendant was dealing drugs while in possession of a firearm, or that a firearm was "in close proximity" to the drugs, it does not pass constitutional muster under ***Alleyne***. ***Id.***

We also observe that appellant does not raise this issue on appeal. However, as the Commonwealth acknowledges, legality of sentencing issues are non-waivable and may even be raised by this court ***sua sponte***. (Commonwealth's brief at 9 n.1.) ***Commonwealth v. Fennell***, 2014 WL 6505791 at *1 (Pa.Super. 2014), citing ***Commonwealth v. Lawrence***, 99 A.3d 116, 123 (Pa.Super. 2014) ("issues pertaining to ***Alleyne*** go directly to the legality of the sentence"); ***Commonwealth v. Miller***, ___ A.3d ___, 2014 WL 4783558 at *5 (Pa.Super. 2014) ("this Court is endowed with the ability to consider an issue of illegality of sentence ***sua sponte***"), quoting ***Commonwealth v. Orellana***, 86 A.3d 877, 883 n.7 (Pa.Super. 2014) (citation omitted). Therefore, it is necessary to remand for re-sentencing without regard for any mandatory minimum sentence prescribed by Section 9712.1. ***Newman***, ***supra***. Furthermore, since our decision will upset the trial court's overall sentencing scheme, we will vacate all of appellant's sentences and remand for complete re-sentencing.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/16/2015