J-S74018-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTOPHER BELTZ | |
| Appellant | No. 3620 EDA 2017 |

Appeal from the Judgment of Sentence Entered October 16, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0000405-2017

BEFORE:  LAZARUS, STABILE, and McLAUGHLIN, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 26, 2019**

Appellant, Christopher Beltz, appeals from the October 16, 2017 judgment of sentence imposing an aggregate one to two years of incarceration followed by three years of probation for driving under the influence ("DUI"), 75 Pa.C.S.A. § 3802, and driving on a suspended license.  We vacate and remand.

On November 4, 2016, Officer Edwin Torres responded to a radio report of an intoxicated man inside a vehicle.  N.T. Hearing, 7/25/17, at 8-10.  Officer Torres observed Appellant in the driver's seat of a car with the ignition turned on.  *Id.* at 10.  The car was parked in a parking lot, but not within the lines of a designated parking spot.  *Id.* at 13.  Officer Torres parked his car behind Appellant's, activated his overhead lights, and checked Appellant's license plate.  *Id.* at 15-16.  Subsequently, Officer Torres observed that Appellant

appeared to be in and out of consciousness. *Id.* at 22. Officer Torres also noted a strong odor of PCP coming from the vehicle. *Id.* at 10, 18-19. Upon speaking with Appellant, Officer Torres observed bloodshot eyes and slurred speech. *Id.* at 26-27. Officer Torres had to ask Appellant for his driver's license and vehicle registration several times. *Id.* at 26. Three women were also in the vehicle, but none of them appeared to be intoxicated. *Id.* at 19, 22. Officer Torres asked Appellant to step out of the vehicle and Appellant complied, but he stumbled. *Id.* at 18. Subsequently, Appellant consented to a blood draw. The consent form provided, among other things, that the fact of a refusal of the blood test could be admitted into evidence in subsequent legal proceedings. *Id.* at 39-40. *See* 75 Pa.C.S.A. § 1547(e).[1]

Appellant was arrested and charged with DUI (75 Pa.C.S.A. § 3802(a)(1), (d)(1), and (d)(2). This was Appellant's third offense under subsections (d)(1) and (2). The Commonwealth also charged Appellant with

---

[1] Section 1547(e) provides:

> **(e) Refusal admissible in evidence.--**In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the fact that the defendant refused to submit to chemical testing as required by subsection (a) may be introduced in evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence but it may be considered along with other factors concerning the charge.

75 Pa.C.S.A. § 1547(e).

driving on a suspended license.  75 Pa.C.S.A. § 1543.  After the conclusion of the suppression hearing, the case proceeded immediately to a nonjury trial.  The trial court found Appellant guilty of all charges.  On October 16, 2017, the trial court imposed sentence as set forth above.  This timely appeal followed.

Appellant raises two issues:

> 1. Did not the lower court err in denying Appellant's motion to suppress physical evidence where Appellant was subjected to coercive warnings before he consented to have his blood drawn?
>
> 2. Did not the lower court err in denying Appellant's motion to suppress physical evidence where Appellant was subjected to an investigatory detention without reasonable suspicion?

Appellant's Brief at 3.

We confine our analysis to the second issue, which we find to be dispositive.  Appellant claims Officer Torres initiated a **Terry**[2] stop before he had reasonable suspicion to do so.  Our standard of review is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.  Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not

---

[2] **Terry v. Ohio**, 392 U.S. 1 (1968).

- 3 -

binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526–27 (Pa. Super. 2015), *appeal denied*, 135 A.3d 584 (Pa. 2016). Our scope of review is confined to the record of the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

Recently, in *Commonwealth v. Livingstone*, 174 A.3d 609 (Pa. 2017) (OAJC), our Supreme Court held that a police officer initiates an investigative detention when he pulls up to a vehicle that is already stopped and activates his overhead lights. *Id.* at 618-25.[3] In essence, no reasonable person would feel free to leave after a police officer activates a police vehicle's emergency lights. *Id.*; *see also Commonwealth v. Thran*, 185 A.3d 1041, 1045 (Pa. Super. 2018), *appeal denied*, 195 A.3d 558 (Pa. 2018). Accordingly, Officer Torres' detention of Appellant was valid if and only if Officer Torres had reasonable suspicion when he activated his vehicle's overhead lights.

In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

_____

[3] Six Justices joined this portion of the opinion.

*Commonwealth v. Foglia*, 979 A.2d 357, 360 (Pa. Super. 2009) (*en banc*) (internal citations and quotation marks omitted), *appeal denied*, 990 A.2d 727 (Pa. 2010). An anonymous tip cannot be the sole basis for an investigative detention, but a tip corroborated by independent police investigation may supply reasonable suspicion. *Commonwealth v. Brown*, 996 A.2d 473, 477 (Pa 2010). "Because an anonymous tip typically carries a low degree of reliability, more information is usually required before investigating officers develop the reasonable suspicion needed to support an investigatory stop of a suspect." *Commonwealth v. Fell*, 901 A.2d 542, 545 (Pa. Super. 2006). In *Commonwealth v. Zahir*, 751 A.2d 1153 (Pa. 2000), our Supreme Court explained that, in the case of an anonymous informant, "the range of details provided and the prediction of future behavior are particularly significant, as is corroboration by independent police work." *Id.* at 1157. "[T]he necessary corroboration may also be supplied by circumstances that are independent of the tip, for example, observation of suspicious conduct on the part of the suspect." *Id.*

In *Commonwealth v. Wimbush*, 750 A.2d 807 (Pa. 2000), our Supreme Court found reasonable suspicion lacking in two consolidated cases involving anonymous tips. In one, the informant said that a man named Tony would drive a white van with a given license plate number on Piney Ridge Road, and that he would have drugs in his possession. *Id.* at 809. Police verified that a man named Anthony Wimbush owned the van with the given

- 5 -

plate number and located his address. The local police already suspected Wimbush of drug activity. *Id.* at 810. Police observed Wimbush driving his van along Piney Ridge Road and stopped him at an intersection. In the second case, an anonymous informant stated that a black male in a white shirt and shorts would exit a certain public housing complex with drugs in his possession and get on a girl's black bicycle. Police observed a man, Lance White, matching the description leave the complex and get on the black bicycle, and stopped him.

In both cases, our Supreme Court noted the absence of independent corroboration of the tipster's allegations of criminal conduct. *Id.* at 812. Regarding defendant Wimbush, police observed no suspicious activity on his part and, despite the suspicions of local police, they had no independent basis for concluding that Wimbush was engaging in criminal conduct before they stopped him. *Id.* at 813. As to White, the fact that he matched the very general description given—a black man in white clothes—and that he got on the described bicycle, was not indicative of criminal activity. *Id.* at 812. The **Wimbush** Court relied in part on **Commonwealth v. Jackson**, 698 A.2d 571 (Pa. 1997), in which a report of a man in a green jacket carrying a gun was insufficient, without more, to support reasonable suspicion. *Id.* at 811.

In **Fell**, on the other hand, this Court found reasonable suspicion where police corroborated a tip that "predicted that a particular car presently in route from New York and transporting three identified occupants and a shipment of

drugs would make its drop-off at a particular Edwardsville apartment in the late afternoon or evening." **Fell**, 901 A.2d at 547.

Instantly, when Officer Torres activated his overhead lights, all he knew was that a man was sitting in a parked vehicle with the ignition turned on, and the vehicle was not parked in a designated spot. The record does not indicate that Officer Torres had a description of the driver or the vehicle. Officer Torres observed no illegal activity and gathered no evidence, independent of the tip, that the person in the driver's seat was intoxicated. Officer Torres' incriminating observations—including an odor of PCP coming from the vehicle, Appellant's bloodshot eyes, slurred speech, and apparent nodding in and out of consciousness—came after Officer Torres activated his overhead lights. Pursuant to **Livingstone** and **Thran**, a police officer must have reasonable suspicion prior to activating overhead lights.

The Commonwealth relies on **Commonwealth v. Smith**, 904 A.2d 30 (Pa. Super. 2006), wherein police received separate tips from identified informants describing erratic driving and loud music emanating from a red SUV. **Id.** at 36. Police arrived on the scene within minutes of the tips and found a vehicle matching the given description "at the precise location described by the second caller, parked crookedly, with the front tire touching the curb and the rear tire two feet from the curb, with the stereo playing loudly and the key in the 'on' position." **Id.** The Commonwealth's reliance on **Smith** is unavailing because **Smith** involved tips from two identified informants.

- 7 -

*Smith* did not hold that a crookedly parked vehicle with the ignition turned on creates reasonable suspicion.

The Commonwealth also cites *Zahir*, in which an unidentified informant told police that a man in a green jacket and blue jeans was selling narcotics at a specific intersection in Philadelphia. *Zahir*, 751 A.2d at 1155. Two and one-half hours after receiving the tip, police observed the defendant at the specified intersection wearing clothing that matched the description. *Id.* When the defendant observed the police, he walked into a restaurant and dropped something on the floor. *Id.* When the police parked their vehicle in front of the restaurant, the defendant went back inside and retrieved something from the floor. *Id.* at 1155-56. Police then approached the defendant and asked what was in his pocket. *Id.* at 1156. This Court held that police had reasonable suspicion, inasmuch as they corroborated the location (a high crime area) and description of the suspect and, in addition, observed behavior consistent with discarding contraband when the suspect saw them. *Id.*at 1157. Further, the suspect appeared to reach for a weapon as police approached. *Id.* Thus, the Commonwealth's reliance on *Zahir* is misplaced because police in that case gathered incriminating evidence independent of the tip.

Finally, the Commonwealth argues that we should not apply *Livingstone* because Appellant was bordering on unconscious and therefore would not have appreciated that he was not free to leave. Commonwealth's

Brief at 10 n.4.  Assuming without deciding that the record would support such a finding, our result would not change because the Commonwealth's argument proposes a subjective standard for determining whether an investigative detention occurs.  The test is an objective one.  ***Commonwealth v. Lyles***, 97 A.3d 298, 302-03 (Pa. 2014) ("[T]he United States Supreme court and this Court have employed an objective test entailing a determination of whether a reasonable person would have felt free to leave or otherwise terminate the encounter.").

In summary, Officer Torres initiated an investigative detention, pursuant to ***Livingstone*** and ***Thran***, before his investigation revealed any evidence of Appellant's intoxication.  The detention was therefore unlawful and the trial court committed an error of law in denying Appellant's motion to suppress evidence gathered from the stop.

Judgment of sentence vacated.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/26/19