J. S55041/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA :     IN THE SUPERIOR COURT OF
                                          :            PENNSYLVANIA
                  v.                 :
                                            :
DAVID JUSTIN TOSTA,            :          No. 2595 EDA 2017
                                            :
             Appellant         :

Appeal from the Judgment of Sentence, June 26, 2017,
in the Court of Common Pleas of Montgomery County
Criminal Division at No. CP-46-CR-0004783-2016

BEFORE: OLSON, J., STABILE, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED DECEMBER 24, 2018**

David Justin Tosta appeals from the judgment of sentence entered on June 26, 2017, by the Court of Common Pleas of Montgomery County following his conviction of possession of a controlled substance, possession of a small amount of marijuana, and possession of drug paraphernalia.[1] After careful review, we affirm.

The trial court provided the following synopsis of the relevant facts and procedural history:

> On April 7, 2016, [appellant] was arrested following a traffic stop where police recovered marijuana, in addition to one and a half pills of Oxycodone, in his car. [Appellant] was charged with possession of a controlled substance (misdemeanor), possession of a small amount of marijuana (misdemeanor), and possession of drug paraphernalia (misdemeanor).

---

[1] 35 P.S. §§ 780-113(a)(16), (32), and (33), respectively.

At about 7:13 PM on April 7, 2016, Kevin Fritchman, an officer with the Norristown Police Department, received an anonymous call concerning an alleged drug transaction occurring at the intersection of Noble and Marshall Streets in Norristown, Montgomery County. The caller described a black sedan on the southwest corner of Noble Street, where the caller observed "a black male wearing a black and red hooded sweatshirt and blue jeans" walk up to the car and collect money from the driver, later identified as [appellant]. After acquiring the money from [appellant], the African-American male entered Apartment A of 932 West Marshall Street, which is "directly across the street" from the black sedan.

About a minute after receiving the call, Officer Fritchman reported to the scene and saw a black sedan matching the registration received from the anonymous caller. From approximately 500 feet away,[Footnote 2] Officer Fritchman watched as "a black male wearing a black and red sweatshirt" exited Apartment A, walked over to the black sedan, and gave "something" to [appellant]. Officer Fritchman "relayed everything . . . over dispatch radio . . . to Officer Robinson."

> [Footnote 2] When defense counsel questioned Officer Fritchman's view of the transaction, Officer Fritchman clarified that he used binoculars.

Carl Robinson, Jr., an officer with the Norristown Police Department, heard Officer Fritchman's radio call. Although Officer Robinson did not observe the transaction, he knew via radio calls that [appellant] engaged in a drug transaction, then drove south on Noble Street in his black sedan. Officer Robinson followed the black sedan, and "activated [his] emergency lights and the air horn in [an] attempt to conduct a vehicle stop" near the intersection of Noble and West Airy Streets. After travelling about 50 more feet, [appellant] eventually turned into an

alley. Before [appellant] stopped his car, Officer Robinson observed him "reaching towards the front center console area built into the car." [Appellant] then parked in a lot, and "immediately exited the vehicle." [Appellant] exited his car at the same time Officer Robinson exited his police car. As [appellant] stood by the driver's side door of his car, Officer Robinson stood right next to him. At that time, Officer Robinson saw "a clear packet of marijuana in the pocket of the driver's door." Officer Robinson arrested [appellant], and then searched the area of the car where he saw [appellant] reach. He found one and a half white pills, later identified as Oxycodone, inside a cigarette package in the center console of the car.

[Appellant] chose to testify during his suppression hearing, and denied engaging in a drug transaction on April 7. Instead, [appellant] claimed he parked his black sedan, and waited for Juan "Ricky" Colon so he could "pay a debt." Mr. Colon resided at 930 West Marshall Street. On the night of the incident, from about 6:45 to 7:00 PM, [appellant] claimed Mr. Colon exited his home, entered [appellant's] car, and sat in the passenger's seat "for about five minutes." [Appellant] gave Mr. Colon $20 or $30 that Brian Horn owed Mr. Colon for cigarettes and drinks. After he gave money to Mr. Colon, [appellant] said "[he] did some text messaging . . . checked Facebook, [and] surfed the web." When [appellant] drove away, he said Officer Robinson stopped him. He decided to park in a lot, and then exited his car to speak with Officer Robinson. [Appellant] claimed Officer Robinson commanded he "[g]et back in the car immediately." [Appellant] said he complied. When he tried to close his driver's side door, [appellant] said "[Officer Robinson] jammed his leg in" to prevent it from closing. Then, [appellant] claimed Officer Robinson began "rummaging around" right before his arrest.

Mr. Colon testified on [appellant's] behalf, and claimed he and [appellant] planned to meet on April 7 so [appellant] could give him $20. Mr. Colon

said [appellant] parked his car across from his home at 930 West Marshall Street. Mr. Colon claimed he sat in the passenger's seat of [appellant's] car for about "three to five minutes."

On March 22, 2017, the [trial court held] a hearing on [appellant's] Motion to Suppress, but subsequently denied it. First, the [trial court] found that reasonable suspicion existed for officers to conduct an investigatory stop because the totality of the circumstances revealed: (1) Officers Fritchman and Robinson had drug arrest experience; (2) the anonymous caller described the make and color of [appellant's] car, reported the car's location, and distinguished the individuals involved; (3) Officer Fritchman's observations at the scene; and ([4]) the Norristown Borough, where the transaction occurred, was a "drug trafficking area." Second, the [trial court] found that Officer Robinson had authority to seize [appellant's] marijuana from his car because he saw marijuana in plain view, placed in an open compartment on the driver's side door. Police officers had authority to further search [appellant's] car, and seize one and a half Oxycodone pills without a warrant, because probable cause existed under the totality of the circumstances, where police officers previously had reasonable suspicion to investigate and already viewed marijuana in plain view.

Later, on March 22, [2017, appellant] waived his right to a jury trial and proceeded with a bench trial. The parties stipulated to incorporating testimony from the suppression hearing into the trial record. The [trial court] ultimately found [appellant] guilty of possession of a controlled substance, possession of a small amount of marijuana, and possession of drug paraphernalia.

The [trial court] sentenced [appellant] on June 26, 2017. For possession of a controlled substance, the [trial court] sentenced [appellant] to 12 months of probation with Montgomery County Adult Probation and required him to pay the cost of prosecution in

addition to a $500 fine. For possession of a small amount of marijuana, the [trial court] sentenced [appellant] to one month probation and required him to pay the cost of prosecution with no additional fine. For possession of drug paraphernalia, the [trial court] sentenced [appellant] to six months of probation and required him to pay the cost of prosecution with no additional fine. The sentences imposed for possession of a small amount of marijuana and possession of drug paraphernalia run concurrent with [appellant's] sentence for possession of a controlled substance. Additionally, the [trial court] sentenced [appellant] to complete an outpatient program for substance abuse and required him to complete 40 hours of community service within one year. Concerning probation, [appellant] must adhere to special conditions of probation and pay the monthly offender supervision fee.[2]

[Appellant] filed a notice of direct appeal on August 7, 2017.[3] Pursuant to a [Pa.R.A.P.] 1925(b) order, [appellant] submitted a concise statement of [errors] complained of on appeal[.]

Trial court opinion, 11/1/17 at 1-5 (citations to record omitted; additional footnotes omitted).

Appellant raises the following issues for our review:

1.    Did [the t]rial [c]ourt abuse its discretion in not suppressing evidence?

2.    Did the Commonwealth's inconsistent and conflicting evidence corroborate an anonymous

---

[2] Appellant filed post-sentence motions on July 6, 2017. The trial court denied appellant's post-sentence motions on July 7, 2017.

[3] August 5, 2017, fell on a Saturday. Accordingly, the final day for appellant to timely file a notice of appeal was the following business day, Monday, August 7, 2017. *See* 1 Pa.C.S.A. § 1908.

> tip justifying seizure of [appellant] and/or a lawful finding of contraband?

Appellant's brief at vi.

When addressing an appeal of a trial court's denial of a motion to suppress evidence, we are held to the following standard:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783-784 (Pa.Super. 2012), *appeal denied*, 65 A.3d 413 (Pa. 2013), quoting *Commonwealth v. Hoppert*, 39 A.3d 358, 361-362 (Pa.Super. 2012), *appeal denied*, 57 A.3d 68 (Pa. 2012) (citations omitted).

> Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and the police. The first of these is a "mere encounter" (or request for information) which need not be supported by any level of

suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

**Commonwealth v. Ellis**, 662 A.2d 1043, 1047 (Pa. 1995) (citations omitted).

"The appellate courts have mandated that law enforcement officers, prior to subjecting a citizen to an investigatory detention, must harbor at least a reasonable suspicion that the person seized is then engaged in unlawful activity." **Commonwealth v. Barber**, 889 A.2d 587, 593 (Pa.Super. 2005) (citation omitted). "Reasonable suspicion is a less demanding standard than probable cause because it can be established by information that is different in quantity and quality than that required for probable cause; it can arise from information that is less reliable than that required to show probable cause." **Commonwealth v. Emeigh**, 905 A.2d 995, 998 (Pa.Super. 2006) (citation omitted).

To meet the standard of reasonable suspicion, "the officer must point to specific and articulable facts which, together with the rational inferences therefrom, reasonably warrant the intrusion. In ascertaining the existence of reasonable suspicion, we must look to the totality of the circumstances to determine whether the officer had reasonable suspicion that criminal activity was afoot." **Barber**, **supra** at 593 (citations and quotations omitted). Further, "police officers need not personally observe

> the illegal or suspicious conduct, but may rely upon the information of third parties, including 'tips' from citizens." ***Id.***

***Commonwealth v. Smith***, 904 A.2d 30, 35-36 (Pa.Super. 2006).

In cases where the police act as a result of an anonymous tip, we have required additional corroborating evidence.

> While a tip can be a factor, an anonymous tip alone is insufficient as a basis for reasonable suspicion. [***Commonwealth v.***] ***Wimbush***, 750 A.2d [807,] 811 [(Pa. 2000)]; [***Commonwealth v.***] ***Jackson***, 698 A.2d [871,] 572 [(Pa. 1997)]. Such anonymous tips must be treated with particular suspicion. ***Jackson***, 698 A.2d at 573. Likewise, presence in a high crime area alone or flight alone does not form the basis of reasonable suspicion. ***Commonwealth v. Cook***, [] 735 A.2d 673, 677 (Pa. 1999). However, a combination of these factors may be sufficient. ***See*** [***Commonwealth v.***] ***Zhahir***, 751 A.2d [1153,] 1157 [(Pa. 2000)] (noting that suspicious conduct corroborates an anonymous tip); ***Cook***, 735 A.2d at 677 (stating that circumstances which alone would be insufficient may combine to show reasonable suspicion); []; [***Commonwealth v.***] ***Pizzaro***, 723 A.2d [675,] 680 [(Pa.Super. 1998)] (finding that flight along with presence in heavy drug-trafficking area may demonstrate reasonable suspicion). . . . ***Terry*** [***v. Ohio***], 392 U.S. [1,] 22 [(1968)] (innocent facts, when taken together, may warrant further investigation); ***Commonwealth v. Riley***, 715 A.2d 1131, 1135 (Pa.Super. 1998) ("a combination of circumstances, none of which alone would justify a stop, may be sufficient to achieve a reasonable suspicion").

***Commonwealth v. Leonard***, 951 A.2d 393, 396-397 (Pa.Super. 2008), quoting ***In the Interest of M.D.***, 781 A.2d 192, 196-197 (Pa.Super. 2001).

Here, the record supports the trial court's conclusion that the police were able to independently corroborate the information received from the anonymous tip. Specifically, the record reflects that the anonymous tip included a description of the individuals involved, a description of the vehicle occupied by appellant, and an accurate recitation of the vehicle's license plate number. (Notes of testimony, 3/22/17 at 8-9.) The anonymous caller also described a transaction in which an individual wearing a black and red hoodie approached the driver's side of appellant's vehicle, accepted money from the driver of the vehicle, and then went into apartment A at 932 West Marshall Street. (*Id.* at 7.) Through his testimony, Officer Fritchman independently corroborated the information received from the anonymous caller upon his arrival to the scene:

> I observed the black sedan bearing the same registration [plate] that the anonymous caller provided. I'm not sure of what that actual registration plate is right now. I observed a white male sitting inside the driver's seat. I then went a block up and I sat there. And then I observed a black male wearing a black and red sweatshirt walk out of 932 [West Marshall Street] and approached the male in the driver's seat, handed him something, and then turned around and walked back into his house.

*Id.* at 9. Officer Fritchman further testified that based on his training and experience, he believed that a drug transaction had just occurred. (*Id.*)

Accordingly, we find that the suppression court did not abuse its discretion when it denied appellant's motion to suppress. The record

demonstrates that the information provided by the anonymous caller was independently corroborated by the police and that the police had the requisite reasonable suspicion in order to conduct an investigatory detention. Therefore, the record supports the trial court's factual findings and the legal conclusions drawn from those facts are correct. Accordingly, appellant's first issue is without merit.

Appellant next argues that the trial court erred by "rely[ing] on credibility where conflicting testimony causes it to base an opinion on speculation or conjecture or a guess in [an] underlying criminal matter." (Appellant's brief at 11.) To bolster this argument, appellant cites *Commonwealth v. Bennett*, 303 A.2d 220 (Pa.Super. 1973). The *Bennett* court held that "[w]hen the testimony is so contradictory on the basic issues as to make any **verdict** based thereon pure conjecture the jury should not be permitted to consider it." *Id.* at 221 (citation omitted, emphasis added). We find *Bennett* to be inapposite when applied to the present case.

As noted above, when considering whether to grant a motion to suppress evidence, credibility determinations are within the exclusive purview of the trial court. *Commonwealth v. Yorgey*, 188 A.3d 1190, 1198 (Pa.Super. 2018), citing *Commonwealth v. McCoy*, 154 A.3d 813, 815-816 (Pa.Super. 2017). Here, the trial court found the testimony of Officers Fritchman and Robinson to be credible. (Trial court opinion,

11/1/17 at 14.) Moreover, the trial court explicitly stated that it did not find appellant's testimony, nor the testimony of appellant's witness to be credible. (***Id.***) The record before us contains ample basis for such a determination. Accordingly, we are not permitted to disturb the trial court's credibility determinations, and appellant's second issue is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/24/18