J-A11009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK A. MURPHY | : | |
| | : | |
| Appellant | : | No. 661 WDA 2022 |

Appeal from the Judgment of Sentence Entered April 25, 2022
In the Court of Common Pleas of Allegheny County
Criminal Division at No.:  CP-02-CR-0006874-2020

BEFORE:   BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:                **FILED: JULY 17, 2023**

Appellant, Mark Murphy, appeals from his judgment of sentence of six months' probation for driving under the influence ("DUI"), general impairment, 75 Pa.C.S.A. § 3802.  Appellant contends that the evidence was insufficient to sustain his conviction.  We affirm.

The arresting officer, Officer Corey Novak, a Pittsburgh police officer, was the Commonwealth's lone witness during Appellant's non-jury trial.  The court also admitted video from a body camera worn by Officer Novak during his interaction with Appellant.

The evidence adduced during trial shows that on August 1, 2020, Officer Novak responded to a report of a motor vehicle accident.  The officer encountered Appellant at the accident scene.  Appellant immediately admitted that the accident was his fault, stating he was not paying attention while

_____

[*] Retired Senior Judge assigned to the Superior Court.

talking with his sister when he nicked another car.  Body Cam Video (BCV) at 0:13-1:07.  The officer stated that Appellant's car had a flat tire.  *Id.* at 1:09.  The officer detected an odor of alcohol on Appellant's breath and observed that Appellant was having trouble maintaining balance and standing still.  N.T., 3/23/22, at 7, 12.  The officer asked whether Appellant had anything to drink that night, and Appellant responded that he had "a little bit," which he then clarified as one beer, and he volunteered to "walk the line" if needed.  BCV at 3:24-3:41.

Appellant walked to the passenger door of his car and opened it.  The officer told him not to go into his car.  Appellant became belligerent, prompting the officer to radio for another unit.  Appellant defied the officer by opening the door a second time and ordering the person inside to get out.  *Id.* at 3:56-4:35.

A woman exited the vehicle, and the officer asked Appellant where he had been coming from.  Instead of answering, Appellant asked what the officer meant and continued to act in a belligerent manner.  Appellant denied that he was becoming aggressive when the officer asked why he was acting in such a manner.  *Id.* at 5:01-5:25. The officer asked Appellant if he would perform field sobriety tests ("FST's").  Appellant first refused, asked why he should do so, and then said he would perform them because he was not drunk.  The officer explained to Appellant that he wanted him to do FST's because Appellant had admitted he was drinking and had an accident.  Appellant again said he did not want to perform FST's, and when he asked what his options

- 2 -

were, the officer said he would take him for blood work. *Id.* at 5:33-6:06. When Appellant said he had no right, the officer stated that he could smell alcohol on Appellant's breath. Appellant became further agitated and accused the officer of lying. The officer pointed out that Appellant was stumbling and not listening, so Appellant yelled that he was "cool" with taking a sobriety test. *Id.* at 6:14-6:49.

The officer said that he was going to begin by checking Appellant's eyes and explained exactly what he was supposed to do, namely, follow the tip of the officer's pen with only his eyes. Appellant continually moved his entire head despite the officer's repeated instruction to only move his eyes. *Id.* at 7:18-8:00. Proceeding to the next test, the officer noted that they were on a "slight hillside" and asked Appellant if he felt he could walk a straight line regardless of the slope. Appellant said he had "no doubt" that he could do so. *Id.* at 8:25-8:40. As the officer began to explain the walk-and-turn test, Appellant interrupted and questioned why he had to look at his feet. When the officer tried to explain that this was part of the test, Appellant became belligerent once more, swearing and accusing the officer of not providing an explanation. The officer then demonstrated exactly what he was to do, but Appellant failed to follow directions. *Id.* at 8:45-11:09.

As the officer attempted to describe the third test, the one-leg stand, Appellant began yelling that it was "bullshit" because he had already done what he was asked to do, ignoring the fact that there was another test. He continued to yell at the officer and use profanity. *Id*. at 11:10-12:14. The

officer asked whether he was refusing to do the test. Appellant continued to yell that he had done everything he was asked, despite the officer's statement that there were three tests. *Id.* at 12:15-12:29. As Appellant continued his tirade, the officer once again attempted to explain the final test. Appellant yelled even louder. *Id.* at 12:40-13:39. Officer Novak produced handcuffs. Appellant said that they could not arrest him and began flailing his arms and moving away as officers approached.

While being transported to the station, Appellant made threats toward the officers and he subsequently refused the DL-26 form, so no blood work was performed. N.T., 3/22/22, at 8, 17-18. When asked whether he believed Appellant was capable of safe driving based on his experience, training and observations, the officer responded, "Absolutely not." *Id.* at 8.

Appellant testified on his own behalf and claimed that on the date in question, he had picked his sister up from a get-together at their uncle's house to give her a ride home to Northview Heights because she had been drinking. Contrary to what he had told Officer Novak, Appellant claimed that he only drank a half can of beer at his uncle's house, but then his stomach started hurting. *Id.* at 21-22. According to Appellant, he and his sister had an argument in the car because he felt she had taken too many cans of beer from her uncle. He claimed that as they were turning into Northview Heights, he "might have been speeding just a little bit" because of the argument when he hit a pothole and got a flat tire, causing him to hit a parked car. *Id.* at 22-24, 27.

Appellant testified that when he got out of the car to assess the damage, "he talked to the guy in the booth, whose car it was, he came outside of the booth and he insisted to call the police." *Id.* at 24. He stated that once police arrived and he was asked to perform FST's, he felt it would be okay to do so since he "wasn't…drunk or anything." *Id.* When asked if he was affected by anything that would affect performance of the FST's, Appellant claimed he had been getting treatment for a medical condition that could occur at any time, or when he has to move his bowels, which made him nauseous and dizzy. *Id.* at 24-25. He alleged that during the incident, he started to get abdominal pain that made him nauseous, as well as "a little irritable." *Id.* at 25-26. He also claimed that he was affected by arthritis in his knees and had trouble maintaining his balance when his feet were together because he was pigeon-toed and flatfooted. *Id.* at 26. Appellant claimed he never thought to mention these conditions to the officer during the FST's. *Id.* at 28-29. Appellant also offered a completed request form from June 2021 to fill a pothole at 200 Penfort Street, which was near the area of the incident. Appellant also offered documents summarizing the medical condition about which Appellant had testified.

Following trial, the court found Appellant guilty of DUI. On April 25, 2022, the court imposed sentence. Appellant filed a timely notice of appeal, and both Appellant and the court complied with Pa.R.A.P. 1925. Appellant raises a single issue in this appeal, "Whether the Commonwealth presented

sufficient evidence to prove the charge of driving under the influence beyond a reasonable doubt?" Appellant's Brief at 7.

When reviewing a challenge to the sufficiency of the evidence, we determine "whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all the elements of the offense." ***Commonwealth v. Cline***, 177 A.3d 922, 925 (Pa. Super. 2017). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." ***Commonwealth v. Stokes***, 78 A.3d 644, 649 (Pa. Super. 2013).

Section 3802(a)(1) of the Vehicle Code provides that "an individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(a)(1). Section 3802(a)(1) is an "at the time of driving" offense, *i.e.*, an offense requiring proof that the defendant was "driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol."

Section 3802(a)(1) permits multiple types of evidence to prove DUI-general impairment, including BAC evidence:

The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol—not on a particular blood alcohol level.

***Commonwealth v. Segida***, 985 A.2d 871, 879 (Pa. 2009).

Construed in the light most favorable to the Commonwealth, the evidence demonstrates beyond a reasonable doubt that Appellant was intoxicated at the time he drove or operated his vehicle on August 1, 2020. Multiple details support the court's determination of general impairment, including: (1) Appellant was involved in a motor vehicle accident in which his tire was blown; (2) upon arriving at the accident scene and meeting Appellant, Officer Novak detected an odor of alcohol on Appellant's breath and observed that Appellant was having trouble maintaining balance and standing still; (3) Appellant admitted causing the accident and having "a little bit" to drink; (4) Appellant opened the passenger door to his car, even though the officer told him not to open it; (5) Appellant became belligerent when the officer told him

not to open the door, which required the officer to radio for backup; (6) Appellant accused the officer of lying when the officer said he smelled alcohol on Appellant's breath; (7) Appellant failed to perform the first two FST's properly in spite of the officer's clear directions; (8) Appellant blamed the officer in profane terms for his poor performance on the FST's; (9) Appellant refused to perform the third FST and began yelling even louder than before; (10) as officers approached him with handcuffs, Appellant waved his arms, attempted to move away, and protested that the police had no right to arrest him; (11) Appellant made threats to the police officers while being transported to the police station; and (12) Appellant refused to submit to a blood test. This evidence is similar to other decisions in which we have found the evidence sufficient to sustain convictions for DUI-general impairment. ***See Commonwealth v. Mobley***, 14 A.3d 887, 890 (Pa. Super. 2011) (evidence was sufficient to show substantial impairment under DUI-general impairment statute where defendant "failed four separate field sobriety tests, smelled of alcohol, and proceeded to coast through a stop sign despite a police officer being in plain view"); ***Commonwealth v. Smith***, 904 A.2d 30, 39 (Pa. Super. 2006) (evidence was sufficient to show substantial impairment where defendant "drove onto a grassy median, drove in the wrong lane of traffic, smelled of alcohol, was unsteady on her feet, was combative, failed the field sobriety tests, and refused a blood alcohol test").

Appellant testified that his behavior during the traffic stop resulted from an upset stomach and his argument with his sister. The court's verdict demonstrates that it did not believe Appellant's version of events and credited the Commonwealth's evidence. Appellant's brief is tantamount to a request that we accept his account of the events in place of the detailed evidence submitted by the Commonwealth. Such a request runs afoul of the well-settled standard in sufficiency challenges that we accept the evidence in the light most favorable to the Commonwealth, the verdict winner. Viewed in this light, the facts that Appellant admitted causing an accident and drinking alcohol before the accident, the smell of alcohol on his person, his failure of two FST's and refusal to complete the third, his escalating aggression and profanity-laden outbursts during a large portion of the encounter, his attempt to resist arrest, and the threats made to officers while being transported, and his refusal to undergo a blood test supports the court's determination that Appellant imbibed enough alcohol to render him incapable of safe driving.

For these reasons, we reject Appellant's challenge to the sufficiency of the evidence, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2023

- 9 -